*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SUTTON/ROE, Minors.

UNPUBLISHED
May 19, 2022

No. 358569
Kalamazoo Circuit Court
Family Division
LC No. 2018-000455-NA

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her three children—AS, BS, and JR—based on respondent's long history of drug addiction and inability to safely parent her children. Respondent now challenges the evidentiary support for the statutory grounds supporting termination, despite that her attorney expressly conceded at the termination hearing that statutory grounds had been established. She also contends that termination of her parental rights was not in the best interests of her children. We affirm.

## I. BACKGROUND

Respondent is no stranger to the child protective system. Two prior child protective proceedings have been initiated against her and her children have been in and out of foster care their entire lives. The state's main concerns have always centered on respondent's use of methamphetamine and domestic violence in the home. The Department of Health and Human Services (DHHS) has provided multiple substance abuse rehabilitation services to respondent since 2010. Respondent also has completed several specialty drug court programs over the years. Respondent has achieved brief periods of sobriety, but has always relapsed. These proceedings were no exception.

The DHHS filed the current petition on November 1, 2018, based on respondent's continued substance abuse and inability to safely care for her children. All three children were initially placed with the eldest two children's paternal grandmother. The youngest child, JR, was eventually placed with his father, although services were required to ensure the safety of that placement. JR was moved to a different relative placement shortly before the termination hearing. The older two children suffered from trauma-based mental health issues. AS spent time in inpatient mental health programs due to self-harm and BS had severe behavioral issues at school.

The DHHS had difficulty finding willing and able homes for AS and BS and they were moved several times during the proceedings.

Respondent initially showed success with recovery in this proceeding. During a string of 56 screens, respondent tested positive for substances only seven times. In January 2020, AS and BS were returned to respondent's care. The next month, however, the case worker learned that respondent was misusing her antidepressant medication. AS had been self-harming and was placed in an inpatient program. In June 2020, respondent's therapist informed the caseworker that respondent was again using methamphetamine. The children were taken back into care while respondent entered a drug rehabilitation program. AS and BS returned home upon respondent's release in July 2020, but respondent relapsed again and the children found themselves in new foster homes.

After her August 2020 relapse, respondent continued to regress. She missed several drug screens and appointments with her substance abuse counselor. She tested positive for methamphetamine on several occasions. In March and May of 2021, respondent tested positive for methamphetamine, amphetamine, and THC. Respondent had rekindled her romance with JR's father and became pregnant again. Respondent continued to abuse substances during her pregnancy. And in March 2021, respondent was charged with felonious assault for attacking a woman with a knife.

Eventually, the court changed the goal from reunification to termination. The termination hearing took place over four days between April and July 2021. At that hearing, the caseworker testified that respondent's chances of achieving sobriety within a reasonable time were slim as respondent was no longer participating in substance abuse treatment or services. Respondent also stopped participating in random drug screens. On the final day of the termination hearing, respondent admitted that she had used methamphetamine the previous week and had been in active addiction for approximately six months.

Ultimately, the circuit court found that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g),[1] and (j), and that termination of respondent's parental rights was in the children's best interests. The circuit court considered a guardianship, but rejected that option because it would not provide the stability, security, and permanence the children needed. Respondent now appeals.

## II. STATUTORY GROUNDS

Respondent challenges the evidentiary support for the grounds underlying the circuit court's termination decision. However, respondent has waived this challenge.

Waiver is the intentional relinquishment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*.

---

[1] The court did not explicitly cite factor (g) in its order, but recited the language of this factor in its ruling.

(quotation marks and citation omitted). Stated differently, "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court. A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008) (quotation marks and citations omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

During closing arguments, respondent's attorney expressly conceded that statutory grounds had been proven: "But frankly, your Honor, it would be a misrepresentation to say that there are not legal grounds for terminating my client's rights. And she knows this, we've talked about it." Counsel proceeded to argue that termination would not be in the children's best interests. Through this concession, respondent waived her right to challenge on appeal the evidentiary support for the statutory termination grounds.

## III. BEST INTERESTS

Respondent also contends that the circuit court clearly erred in finding that termination of her parental rights was in her children's best interests. Respondent emphasizes the loving relationship and strong bond she has with her children and argues that a less restrictive measure (such as guardianship) was warranted.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the court's factual findings in this regard for clear error. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003).

When determining whether termination is in the best interests of the children, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors relevant to the best-interest determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). "[T]he likelihood that the child could be returned to her parents' home within the foreseeable future, if at all," is also relevant. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015) (quotation marks and citation omitted). "[T]he fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted). Moreover, the court must consider the situation of each child involved to determine if termination would be in his or her individual best interests. *White*, 303 Mich App at 715.

Under the right conditions, a court may forego termination and instead place the child in a guardianship. A guardianship allows the children "to keep a relationship with the parent when placement with the parent is not possible." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). However, a circuit court is not required to establish a guardianship in lieu of terminating parental rights if it is not in the child's best interests to do so. MCL 712A.19a(9)(c); *In re COH*, 495 Mich 184, 197; 848 NW2d 107 (2014); *TK*, 306 Mich App at 704-705. And a guardianship can only be arranged if there is a suitable adult willing and available to serve in that capacity.

We focus on AS and BS together as their interests are very similar. AS and BS are in their teen years. Because of their parents' serious substance abuse issues, AS and BS have spent their entire lives bouncing between foster homes and the home of their parents. By the initiation of the 2018 proceedings, AS and BS had experienced significant trauma. AS suffers from depression and possible borderline personality disorder. She engaged in self-harm. AS was admitted to inpatient mental health treatment programs on several occasions. BS has anger issues and was diagnosed with oppositional defiant disorder. BS was suspended and expelled from schools and had trouble in his foster placements. These trauma-based issues made it difficult to place AS and BS during their multiple transitions between foster homes throughout the proceedings.

Respondent emotionally supported AS and BS through these issues. However, the children understood that their trauma was caused, in part, by their mother's conduct over the years. After their brief return to their mother's care in the summer of 2020, AS and BS made more effort to connect with their foster families and expressed hope of being adopted. AS expressed anger at her mother for continuing to abuse methamphetamine after becoming pregnant. Given their ages, their emotional troubles, and their bond with respondent, placing AS and BS in a guardianship may have been supportable. However, there was no one to serve as guardian. No local relatives were willing and able to be designated as guardian for the children. Respondent recommended two out-of-state relatives, but neither was in a position to take the children.

Moreover, AS and BS could no longer wait in limbo while respondent tried to overcome her addictions. Respondent had been using meth since the age of 13. She participated in intensive and lengthy substance abuse treatment programs during the 2010 and 2015 child protective proceedings, through the drug court, and on her own. Respondent continued these extensive services during the current proceeding. While respondent initially showed improvement, she again relapsed. By the time of the termination hearing, respondent had rekindled her relationship with an abusive partner, was pregnant, was using meth, and had completely dropped out of substance abuse treatment services. The court's only option under these circumstances was to terminate respondent's parental rights to AS and BS.

JR is much younger than his siblings and has only been removed from his mother's care once. He is now safely placed with paternal relatives. JR's visits with his mother went well and it is clear that parent and child love each other. However, given his young age, JR needs a permanent stable home and has a strong chance of finding that in his current placement. These proceedings lasted 2½ years and yet respondent continued to abuse methamphetamine one week before the termination hearing. She had stopped all services aimed at addressing her substance abuse. It was highly unlikely that respondent would overcome her addiction issues and be able to provide a safe home for JR any time in the near future. JR cannot wait indefinitely for his mother to be able to care for him and it was in his best interests to terminate respondent's rights.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra